No. 2023-1123

# In the United States Court of Appeals For the Federal Circuit

SISVEL S.p.A,

*Appellant*,

v.

TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC., TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, HONEYWELL INTERNATIONAL INC., SIERRA WIRELESS, INC., THALES DIS AIS DEUTSCHLAND GMBH,

*Appellees.*

On Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board, No. IPR2021-00678

## RESPONSE BRIEF OF APPELLEES

Jeremy D. Peterson
Bradford A. Cangro
PV LAW LLP
5335 Wisconsin Avenue, N.W., Suite 440
Washington, DC 20015
(202) 371-6861
(202) 888-3163 (Fax)

***Counsel for Appellees TCT Mobile International Limited, TCT Mobile, Inc., TCT Mobile (US) Inc., TCT Mobile (US) Holdings, Inc., and TCL Communication Technology Holdings Limited***

*[additional counsel on inside cover]*

Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth St., Suite 1400
Denver, Colorado
Phone: (303) 291–2388
E-mail: atessar@perkinscoie.com

Daniel Tyler Keese
PERKINS COIE LLP
1120 NW Couch St
Portland, Oregon
Phone: (503) 727–2132
E-mail: dkeese@perkinscoie.com

**COUNSEL FOR APPELLEE SIERRA WIRELESS, INC.**

Guy Yonay
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0800
gyonay@pearlcohen.com

Kyle Auteri
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0824
kauteri@pearlcohen.com

**COUNSEL FOR APPELLEE THALES DIS AIS DEUTSCHLAND GMBH**

Benjamin E. Weed
Gina A. Johnson
K&L GATES LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 372-1121

Brian P. Bozzo
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-6500

**COUNSEL FOR APPELLEE HONEYWELL INTERNATIONAL INC.**

***Exemplary ’279 Patent Claims***

Claims 1, 3-5, 11, and 13-15 of the ’279 patent were challenged and held unpatentable below. Claims 1 and 11 are exemplary claims and are set forth below:

1. A method for deactivating Semi-Persistent Scheduling (SPS) transmission in a wireless mobile communication system, the method comprising:

   performing, by a User Equipment (UE), a SPS transmission at an interval of a subframe period configured by a radio resource control (RRC) signal;

   receiving, by the UE, a Physical Downlink Control Channel (PDCC) signal with a Radio Network Temporary Identifier (RNTI), where in the PDCCH signal includes a first field related to a resource allocate; and

   performing a procedure for deactivating the SPS transmission if the PDCCH signal satisfies conditions for SPS deactivation;

   where the conditions for the SPS deactivation include: the RNTI is a SPS Cell RNTI (SPS C-RNTI); and the first field is entirely filled with ‘1’.

11. A User Equipment (UE) used for in a wireless mobile communication system, the UE configured to :

   perform a Semi-Persistent Scheduling (SPS) transmission at an interval of a subframe period configured by a radio resource control (RRC) signal;

   receive a Physical Downlink Control Channel (PDCCH) signal with a Radio Network Temporary Identifier (RNTI), wherein the PDCCH signal includes a first field related to a resource allocation; and

   performing a procedure for deactivating the SPS transmission if the PDCCH signal satisfies conditions for SPS deactivation;

   where the conditions for the SPS deactivation include: the RNTI is a SPS Cell RNTI (SPS C-RNTI); and the first field is entirely filled with ‘1’.

Appx157-158.

## CERTIFICATES OF INTEREST

Counsel for Appellees TCL Communication Technology Holdings Limited; TCT Mobile International Limited; TCT Mobile, Inc.; TCT Mobile (US) Inc.; and TCT Mobile (US) Holdings Inc. certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   TCL Communication Technology Holdings Limited
   TCT Mobile International Limited
   TCT Mobile, Inc.
   TCT Mobile (US) Inc.
   TCT Mobile (US) Holdings Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   **None/Not Applicable**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

   TCL Electronics Holdings Limited
   TCT Mobile Worldwide Limited
   TCT Mobile (US) Holdings Inc.
   TCT Mobile (US) Holdings Inc.
   Winning Synergy Limited

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

   **None/Not applicable**

5. Related Cases. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- *Sisvel Int'l SA et al. v. Honeywell International, Inc.*, Case No. 1:19-cv-01143 (D. Del.);
- *Sisvel Int'l SA et al. v. Verifone Sys., Inc.*, Case No. 19-cv-01144 (D. Del.);
- *Sisvel Int'l SA v. Xirgo Techs.*, Case No. 19-cv-01145 (D. Del.); and
- *Sisvel Int'l SA v. HMD Am., Inc.*, 1:20-cv-22051 (S.D. Fla.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: April 19, 2023

By: /s/ Jeremy D. Peterson
Jeremy D. Peterson

Counsel for Appellee Sierra Wireless, Inc. certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   **Sierra Wireless, Inc.**

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   **Sierra Wireless America, Inc.**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

   **None**

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

   (a) **Not applicable**

   (b) **Not applicable**

5. Related Cases. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- *Sisvel Int'l SA et al. v. Honeywell International, Inc.*, Case No. 1:19-cv-01143 (D. Del.);
- *Sisvel Int'l SA et al. v. Verifone Sys., Inc.*, Case No. 19-cv-01144 (D. Del.);
- *Sisvel Int'l SA v. Xirgo Techs.*, Case No. 19-cv-01145 (D. Del.); and

- *Sisvel Int'l SA v. HMD Am., Inc.*, 1:20-cv-22051 (S.D. Fla.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable**

Dated: April 19, 2023

By: /s/ Daniel Tyler Keese
Daniel Tyler Keese

Counsel for Appellee Thales DIS AIS Deutschland GmbH certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   Thales DIS AIS Deutschland GmbH[1]

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   Thales DIS AIS USA, LLC[2]

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

   Thales S.A.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

   (a) **Not applicable**

   (b) **Pearl Cohen Zedek Latzer Baratz LLP**: **Guy Yonay, Kyle Auteri**

5. Related Cases. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

---

[1] Thales DIS AIS Deutschland GMBH's name has been changed to Telit Cinterion Deutschland GmBH. A motion for leave to substitute Telit Cinterion Deutschland GmbH is currently pending.

[2] Thales DIS AIS USA LLC's name has been changed to Telit Cinterion USA LLC.

- *Sisvel Int'l SA et al. v. Honeywell International, Inc.*, Case No. 1:19-cv-01143 (D. Del.);
- *Sisvel Int'l SA et al. v. Verifone Sys., Inc.*, Case No. 19-cv-01144 (D. Del.);
- *Sisvel Int'l SA v. Xirgo Techs.*, Case No. 19-cv-01145 (D. Del.); and
- *Sisvel Int'l SA v. HMD Am., Inc.*, 1:20-cv-22051 (S.D. Fla.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: April 19, 2023 By: /s/ Guy Yonay
Guy Yonay

Counsel for Appellee Honeywell International Inc. certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

Honeywell International Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

**None/Not Applicable**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

**None/Not Applicable**

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

Erik Halverson (formerly of K&L Gates LLP)

5. Related Cases. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- *Sisvel Int'l SA et al. v. Honeywell International, Inc.*, Case No. 1:19-cv-01143 (D. Del.);
- *Sisvel Int'l SA et al. v. Verifone Sys., Inc.*, Case No. 19-cv-01144 (D. Del.);
- *Sisvel Int'l SA v. Xirgo Techs.*, Case No. 19-cv-01145 (D. Del.); and
- *Sisvel Int'l SA v. HMD Am., Inc.*, 1:20-cv-22051 (S.D. Fla.).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: April 18, 2023 By: /s/ Benjamin E. Weed
Benjamin E. Weed

# TABLE OF CONTENTS

**Page(s)**


Table of Authorities ........................................................................................ xi

I. Statement of Related Cases.....................................................................1

II. CounterStatement of the Issues ..............................................................4

III. Statement of the Case ...........................................................................5

**A. The ’279 Patent** ...............................................................................7

**B. Procedural History** ..........................................................................9

IV. Summary of the Argument ....................................................................12

V. Argument .............................................................................................14

A. The Board’s Decision Was Not Erroneous And is Supported by Substantial Evidence.....................................................................................14

1. Remand is Not Warranted Because the Board Did Not Misconstrue the Claims or Sisvel’s Argument and Evidence.............................................14

a. What Sisvel Has Not Argued ..............................................................14

b. The Board Clearly Articulated How Each Claim Element Was Found in The Prior Art .......................................................................................15

c. The Board Correctly Found Samsung Did Not Need to Teach Unclaimed Calculations .......................................................................16

d. The Board Did Not Ignore Sisvel’s Evidence, but ConcludedThere Was a Reasonable Expectation of Success .........................................18

2. The Board’s Finding That the Use of All “1s” Would Have Been Obvious in View of Dahlman and Samsung is Supported by Substantial Evidence ................................................................................................27

VI. Conclusion & Prayer for Relief.............................................................33

VII. Certificate of Compliance.....................................................................35

VIII. Certificate of Authority .......................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313, 1355 (Fed. Cir. 2003) ....................20

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ....................32

*Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020)..22

*In re Antor Media Corp.*, 689 F.3d 1282, 1289-1290 (Fed. Cir. 2012)....................20

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
676 F.3d 1063, 1077 (Fed. Cir. 2012) .................... 36, 39

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) ....................22

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ....................27

*Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*,
485 F.3d 1157, 1162 (Fed. Cir. 2007) .................... 21, 28

*Meiresonne v. Google, Inc.*, 849 F.3d 1379 (Fed. Cir. 2017)....................34

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007).................... 28, 39

*Phil-Insul Corp v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed. Cir. 2017)...5, 14

*Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309 (Fed. Cir. 2016)..... 21, 22

*United States v. Russ*, 861 F.2d 184, 185 (8th Cir. 1988)....................5

*Yeda Research v. Mylan Pharms. Inc.*, 906 F.3d 1031 (Fed. Cir. 2018)....................22

*Yorkey v. Diab*, 601 F.3d 1279 (Fed. Cir. 2010)....................32

## I. STATEMENT OF RELATED CASES

This appeal concerns the final written decision ("FWD") issued by the United States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("PTAB: or the "Board") in Case No. IPR2021-00678 finding invalid claims 1, 3-5, 11 and 13-15 of U.S. Patent No. 8,971,279 ("the '279 patent").

No other appeal in or from that same proceeding was previously before this or any other appellate court. Except for the following matters that also concern the '279 patent, counsel is unaware of any other case pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision:

*Sisvel Int'l S.A. v. Honeywell Int'l, Inc.*, No. 20-cv-0652 (D. Del.);

*Sisvel Int'l S.A. v. Xirgo Techs.*, No. 20-cv-00659 (D. Del.);

*Sisvel Int'l S.A. v. HMD Am., Inc.*, No. 20-cv-22051 (S.D. Fla..);

*Sisvel Int'l S.A. v. VeriFone, Inc.*, No. 20-cv-00656 (D. Del.);

*3G Licensing SA v. TCL Commc'n Tech Holdings Ltd.*, No. 20-cv-00656 (D. Del.).

## INTRODUCTION

Sisvel has appealed the Board's final written decision that invalidated claims 1, 3-5, 11, and 13-15 (the "invalidated claims") of U.S. Patent No. 8,971,279 as obvious based on the Samsung and Dahlman references. (D.I. 26) ("Appellant Brief") at 2-3 (listing the statement of the issues).

However, the Board also invalidated all of the challenged claims of the '279 patent based on the separate combination of the Samsung and Nokia references (Ground II). Appx6-7, Appx52. Sisvel has not appealed this decision by the Board and, as such, this issue has been waived. Since the '279 patent has been found invalid based on this not appealed ground, the Board's determination regarding that ground must be affirmed, rendering the remainder of this appeal moot. Even if the Board's decision with respect to the Samsung and Nokia combination is considered on appeal, however, the Board's decision was based on substantial evidence and should be affirmed.

The key issues in this appeal, other than Sisvel's failure to appeal the Samsung and Nokia ground, relate to Sisvel's disagreement with the Board's well-reasoned and correct analysis underlying the Board's ruling that the claim element "the first field is entirely filled with '1'" was taught or rendered obvious by the prior art, as well as the Board's thoughtful and reasoned ruling regarding certain arguments raised by Sisvel. Specifically, the Board did not ignore Sisvel's arguments regarding the absence of allegedly key supporting calculations in the asserted prior art. Instead, the Board properly found that the prior art

teaches each of the claimed elements, including because there is no requirement in the invalidated claims that certain calculations be found in the prior art as argued by Sisvel. The claims merely recite "the first field is entirely filled with '1'," precisely what the prior art teaches, and Sisvel has not argued to the contrary. The Board's conclusions were supported by the substantial weight of evidence, and Sisvel's arguments do not warrant reversal or remand.

## II. COUNTERSTATEMENT OF THE ISSUES

1. Has Sisvel failed to appeal the Board's determination that every challenged claim is unpatentetable based on the combination of Samsung and Nokia, and as such, has Sisvel waived any argument that the challenged claims are invalid?

2. Has Sisvel failed to show that the Board erred by misconstruing the claims, the law, and Sisvel's arguments to conclude that a POSITA would have been motivated with a reasonable expectation of success to combine Samsung with Dahlman to create the same first field "entirely filled with '1'" recited in the claims?

3. Has Sisvel failed to show there was not substantial evidence to support the Board's conclusion that a POSITA would have been motivated with a reasonable expectation of success to combine Samsung with Dahlman to create the same first field "entirely filled with '1'" recited in the claims?

## III. STATEMENT OF THE CASE

The Board found that every challenged claim was unpatentable based on two grounds: (1) Dahlman in view of Samsung; and (2) Nokia in view of Samsung. Appx00052. Sisvel has failed in its appeal to address the Board's determination that all of the challenged claims are unpatentable based on Nokia in view of Samsung. Appeal Brief at 2-3. Sisvel's appeal of that ground is, therefore, waived and the Board's determination should be affirmed. *Phil-Insul Corp v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed. Cir. 2017) ("An issue that falls within the scope of judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.") quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (citing *United States v. Russ*, 861 F.2d 184, 185 (8th Cir. 1988)). Sisvel's questions presented on appeal, by their own terms, apply *only* to the Dahlman/Samsung combination, and Section II.B of Sisvel's argument addresses only the Dahlman/Samsung combination. Appeal Brief at 2-3, 30-38.

To the extent that Sisvel intended to appeal the Board's decision invalidating the claims as obvious over the combination of Nokia in view of Samsung, that is not encompassed in Sisvel's questions presented. Moreover, Sisvel fails to demonstrate that the Board's decision based on the Nokia/Samsung combination was incorrect, much less that there was any reversible error.

Turning to the arguments actually raised by Sisvel, all of the features recited in claims 1, 3-5, 11, and 13-15 (the "invalidated claims") of U.S. Patent No. 8,971,279 (the "'279 patent") are found in the prior art. This appeal boils down to whether Samsung teaches a single element "the first field is entirely filled with '1.'" Samsung is a publication of the 3GPP Technical Specification Group for Radio Access Network (an industry standards group), Technical Revision Specification R2-084455, 3GPP TSG-RAN#63 Meeting, Jeju, South Korea, August 18th-22nd on August 12, 2008 ("Samsung") entitled "SPS resource release". Appx1744. Appellants introduced clear evidence illustrating that Samsung did in fact disclose this contested element. In fact, Samsung is a one-page proposal directed solely to modifying a draft 3GPP standard specifically to use an RB assignment field of "all 1s" for SPS resource release. Appx926. This is shown below from excerpts from Samsung itself.

Samsung's title is "SPS resource release." Appx1744.

**Title: SPS resource release**

Excerpt of Appx1744.

Samsung shows that for each system size there are a number of unused code points in the RB assignment field, that filling in any of the unused code points could indicate SPS resource release, and it proposes to use all 1s to keep things simple (i.e., no calculations would be needed). *Id.*

As shown in table 1 only part of code points are used in RB assignment field of all system bandwidth if the frequency hopping is disabled. Since we are talking about resource release, there is no reason to enable the frequency hopping.

Table 1. Number of unused code points in RB assignment field.

| *System BW* | *#of RBs* | *# of required code point* | *# of code points* | *Unused code points* |
|---|---|---|---|---|
| 1.4 | 6 | 21 | 32 | 11 |
| 5 | 25 | 325 | 512 | 187 |
| 10 | 50 | 1275 | 2048 | 773 |
| 20 | 100 | 5050 | 8192 | 3142 |

Any of the unused code point could indicate the SPS resource release. To make the relevant text simple, all 1s could be a good candidate. It is proposed to agree on the followings and send LS to RAN1 to inform RAN2 decision.

**Proposal: all 1s in RB assignment field in SPS resource allocation DCI releases the SPS resource currently configured.**

Excerpt of Appx1744 (highlighting added).

Below, Sisvel argued that Samsung was deficient because it did not provide the calculations necessary to adequately teach this element. The claim language does not, however, recite any specific calculations, just that the "first field is entirely filled with '1.'" The Patent Trial and Appeal Board ("the Board") weighed the competing evidence and correctly and reasonably found in Appellees' favor because Samsung expressly teaches the "first field entirely filled with '1'" as highlighted in the caption to Table 1, reproduced above. Substantial evidence supports this finding, and Sisvel has not shown that the Board's decision is based on reversible error.

### A. The '279 Patent

The '279 patent relates to "scheduling radio resources for semi-persistent uplink/downlink packet data transmission in a cellular wireless communication system." Appx145, 1:21-29. The '279 patent describes "a method and apparatus for informing a UE [user equipment] of [semi-persistent scheduling (SPS)] deactivation without adding a new

bit field or a new control channel format in a communication system for allocating resources." Appx00146, 3:67-4:3. The method includes "receiving by a user equipment (UE), a downlink control channel including resource allocation information, and releasing resource allocation for the UE when a binary field indicating the resource allocation information is entirely filled with 1." Appx00146, 4:5-11. According to the '279 patent, "[t]he downlink control channel may be a physical downlink control channel (PDCCH)," and the resource allocation information may be a binary field representing a resource indication value (RIV), which indicates a start resource block and the length of consecutively allocated resource blocks (RBs). Appx00147, 5:8-9, 5:12-15, Appx00151, 13:35-38. The '279 patent also describes using a conventional RIV table to determine whether the RIV is valid or invalid. For example, RIVs defined in the table are referred to as valid RIVs, whereas RIVs that are undefined in the table are referred to as invalid RIVs. Appx00153, 17:47-53. The '279 patent further describes that "when a downlink control signal format based on the compact-type RB allocation scheme is used for signaling SPS activation and/or SPS deactivation, an RIV contained in the PDCCH from which the SPS [cell radio network temporary identifier] (SPS C-RNTI) is detected may be used as signaling information for SPS deactivation indication" if it "[has] any one of values capable of being used as the above-mentioned invalid RIVs." Appx00155, 21:33-41.

For example, "according to the RIV construction method shown in Table 1, a valid RIV indicating a generable RB allocation combination may be any of RIVs from 0 to 209

(where this RIV '209' is maximum valid RIV)," whereas "an invalid RIV may be any one of RIVs from 210 to 255." Appx00155, 21:42-46, Table 1. "If the RIV…belongs to the invalid RIV, the UE recognizes that signaling information indicating SPS deactivation is transmitted." Appx00155, 21:46-50. "Specifically, the case where the RIV . . . is determined to be the . . . specific value acquired when the entirety of the binary field is filled with 1, it can be recognized that signaling information indicating SPS deactivation is transmitted on the basis of the above specific value." Appx00155, 21:55-60. For example, "[a]s shown in FIG. 17, if the RIV binary field is composed of 8 bits, a binary number RIV (-111111112) is acquired," which "may indicated that signaling information indicating SPS deactivation was transmitted." Appx00155, 21:63-67, Appx00140, Fig. 17.

## B. Procedural History

On March 26, 2021, TCT Mobile International Limited and other entities (collectively, "Petitioners") petitioned for *inter partes* review ("IPR") of claims 1, 3-5, 11, and 13-15 of the '279 patent. Appx175-256. The Petition asserted four grounds of invalidity, all based on Section 103 invalidity arguments. Appx196. Since the Petition, it has been clear, and Sisvel has never refuted, that filling a field of the DCI with all 1s to signal deactivating the SPS was the alleged only improvement over the prior art in the '279 patent. Appx201-202.

Sisvel filed a Preliminary Response on July 8, 2021. Appx281-315. The Board granted institution for all challenged claims. Appx356-389.

Sisvel's primary argument in its subsequent Patent Owner Response (Appx452-499) was that the prior art did not adequately teach the claim element "first field filled entirely with '1.'" Appx478-485. Specifically, Sisvel argued that Samsung failed to provide adequate technical details and calculations for the "all 1s" limitation. *Id.*

In reply, Petitioners explained why there was a reasonable expectation of success in using Samsung's proposed "all 1s" as a deactivation codeword in a proposed LTE system. Appx548-549. Specifically, Petitioners argued that Samsung teaches "to use all 1s in [the] RB assignment field on SPS resource allocation . . . to release the SPS resource" and "all 1s could be a good candidate." Appx00547-548; Appx1744. "In particular, Samsung discloses 'all 1s in RB assignment field in SPS resource allocation DCI releases the SPS resource currently configured.'" Appx00034; Appx01744.

In its Sur-Reply, Sisvel again argued that Samsung failed to disclose necessary equations, specifically that a POSITA would never use all 1s unless there was certainty that the code would work as such by always returning an invalid result, and that Samsung did not provide any mathematical comfort to a POSITA and therefore a POSITA would have no reasonable expectation of success. Appx575-576 ("RIV is defined in the '279 patent's specification based on a series of calculations.").

The Board issued its FWD on September 22, 2022, holding all challenged claims unpatentable. Appx1-54. In its decision, the Board analyzed the parties' arguments in detail and largely adopted Petitioner's positions. The Board held that a POSITA, in view of

the prior art, would have a reasonable expectation of success in using all 1s. Appx35-39. The Board agreed with Petitioner's argument that this Court's case law does not require "absolute" certainty of success, just a "reasonable" expectation and, since Samsung teaches "to use all 1s in [the] RB assignment field on SPS resource allocation . . . to release the SPS resource" and that "all 1s could be a good candidate," one of ordinary skill in the art would have had a reasonable expectation of success. *See* Appx18, Appx37-38; Appx1744.

This appeal followed.

## IV. SUMMARY OF THE ARGUMENT

This Court should affirm the Board's decision.

Sisvel has not raised questions regarding the Board's determination that each and every challenged claim is invalid based on the combination of Nokia and Samsung. Appeal Brief at 2-3, Appx00052. As such, Sisvel's appeal of that ground is waived and is no longer ripe for adjudication. *Phil-Insul Corp.,* 854 F.3d at 1357. Therefore, this Court should affirm the Board's determination that the '279 patent is invalid based on that reason alone.

Sisvel fares no better with the arguments it actually does raise. First, Sisvel argues that the Board oversimplified the requirements of the claims by concluding that filling the first field with 1s would suffice because the claims require the first field be filled entirely with 1s so that it functions as an SPS deactivation signal.[3] Appellant Brief at 18. However, this is exactly what Samsung teaches. Samsung expressly teaches "to use all 1s in [the] RB assignment field on SPS resource allocation . . . to release the SPS resource" and that "all 1s could be a good candidate." *See* Appx37-38, Appx 1744. In view of these express teachings from Samsung, one of ordinary skill in the art would have had a reasonable expectation of success using all 1s in [the] RB assignment field on SPS resource allocation. Sisvel also argues that the claims require specific and ***unclaimed*** calculations to show an

---

[3] Sisvel has not actually argued that the Board misconstrued the claims and, in fact, Sisvel did not propose any claim constructions in the IPR below. Appx470.

expectation of success. Appellant Brief at 18-22 However, this is not true, and Sisvel never sought such a construction before the Board. The claims do not recite the various calculations disclosed in the '279 specification, and neither does the case law. The Board was able to find all of the claimed elements in the prior art and, thus, correctly decided that those claims were invalid.

Second, Sisvel argues that there was no substantial evidence to support the Board's conclusion that a POSITA would have been motivated with a reasonable expectation of success to combine Samsung with Dahlman with respect to the first field entirely filled with 1s limitation. Appellant Brief at 19. The Board extensively analyzed these arguments and correctly came to the opposite conclusion, primarily because it properly relied on Appellee's expert testimony and discounted Appellant's expert testimony.

The Board's decision thus was supported by substantial evidence and, for that reason, should be upheld in all respects.

# V. ARGUMENT

This Court should affirm the Board's finding that the challenged claims are unpatentable as being obvious in view of Dahlman and Samsung and also obvious over Nokia and Samsung.

## A. The Board's Decision Was Not Erroneous And is Supported by Substantial Evidence

### *1. Remand is Not Warranted Because the Board Did Not Misconstrue the Claims or Sisvel's Argument and Evidence*

#### a. What Sisvel Has Not Argued

Sisvel never argues that Samsung fails to disclose a method for SPS deactivation by filling the first field of the SPS C-RNTI with '1' which is the only challenged requirement of the claims. Sisvel could not, in good faith, raise such an argument because, as shown above, Samsung discloses exactly this element. The Board properly analyzed the references and the arguments advanced by the parties and came to the conclusion that the claims were obvious.

Sisvel also fails to argue that any element claimed by the '279 patent is not directly found in the combinations proposed by Appellees. Sisvel raises no argument that a POSITA would not have reasonably combined the combinations proposed by Appellees. Neither does Sisvel argue that the Board misconstrued the claims.

### b. The Board Clearly Articulated How Each Claim Element Was Found in The Prior Art

The Board clearly articulated how the prior art shows every element of the ’279 patent claims. As noted by the Board, the PDCCH signal includes the first field related to the resource allocation and that is the RB assignment field. Appx00034 (“Petitioner sets forth adequate support to show that Dahlman teaches the ‘PDCCH signal includes a first field related to a resource allocation,’ as recited in claim 1 – namely, the RB allocation field in Dahlman – and Patent Owner presents no specific argument to the contrary.”). As further noted by the Board, Samsung teaches “‘a mechanism using a code point of RB assignment field in DCI’ in order to perform SPS resource release in which ‘[a]ny of the unused code point[s] could indicate the SPS resource release.’” *Id.*; Appx1744. In particular, Samsung discloses …‘all 1s in RB assignment field in SPS resource allocation DCI releases the SPS resource currently configured.’” *Id.* Therefore, Samsung discloses this element. *Id.*

Samsung clearly discloses the use of all 1s. The Board correctly found this. To the extent Sisvel argues anything beyond a reasonable likelihood of success, that is not the standard. Further, to the extent that Sisvel tries to import calculations into the claims, that is not a requirement of the claims.

c. The Board Correctly Found Samsung Did Not Need to Teach Unclaimed Calculations

All of Sisvel's arguments can be distilled down to two shaky and unsupported premises. Sisvel's first argument, in essence, is that even though Samsung expressly teaches to use a first field filled entirely with 1s for SPS deactivation, Samsung's disclosure is not enough because the unclaimed calculations disclosed in the '279 patent specification are required to know that all 1s could reliably release the SPS resource allocation with a reasonable expectation of success. As will be discussed below, this is simply not true.

First, the Board found that Samsung teaching "all 1s could be a good candidate" suggests using all 1s, rather than cutting against it, and the Board correctly relied on Appellees' expert testimony to that effect. Appx00036, citing Appx02550, 93:11-16 ("So any one of those unused code points could be used to release the SPS resource with the UE and they're saying to make it simple that, let's just use all ones and not have to figure out which one of these other unused code points we should use."); *see also* Appx02541, 84:3-5 ("[Y]ou don't have to calculate anything if you use all ones."). This is supported by precedent. *In re Antor Media Corp.*, 689 F.3d 1282, 1289-1290 (Fed. Cir. 2012) ("[A]s an initial matter, the mere use of forward-looking language (such as terms like 'should') does not show one way or another whether a person of ordinary skill in the art would have to engage in undue experimentation to perform the claimed invention. Indeed, undue experimentation is determined based on both the nature of the invention and the state of the art."). In contrast, the Board found all of Appellant's expert testimony to be "factually

unsupported testimony" and that "there is no evidence of record supporting the contention that Samsung's proposal would not work." Appx37. As explained below, the Board made a thorough analysis of the nature of the invention and the state of the art and found this evidence to contradict the evidence advanced by Appellants.

From this evidence, the Board correctly found that there was a reasonable expectation of success for the proposed combinations. Appx00037. The Board noted that Samsung "presents its solution as a 'simple release mechanism' and that 'any of the unused code points could indicate' the release and 'all 1s could be a good candidate.'" Appx00037, *citing Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). Samsung presents this evidence with "no hesitation or doubt." *Id.*

The Board was exactly correct in drawing this conclusion. Absent evidence to the contrary, Samsung teaches that all 1s would work as disclosed and there is no evidence to the contrary. Samsung expressly teaches the use of all 1s for SPS deactivation, and this Court has held that both prior art patents and printed publications **are presumed enabling and that it is the patent owner's burden to prove that they are not**. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003) ("We hold that an accused infringer should be similarly entitled to have the district court presume the enablement of unclaimed (and claimed) material in a prior art patent defendant asserts against a plaintiff."); *see also Amgen Inc.*, 314 F.3d at n. 22 ("We note that by logical extension, our reasoning here might also apply to prior art printed publications as well.");

*In re Antor Media Corp.*, 689 F.3d 1282, 1288 (Fed. Cir. 2012) ("a prior art printed publication cited by an examiner is presumptively enabling barring any showing to the contrary by a patent applicant or patentee.").

The Board also noted "the record lacks any evidence to the contrary or that using all 1s in an RB allocation field as employed for SPS scheduling in Dahlman would have been 'uniquely challenging or difficult for one of ordinary skill in the art.'" Appx36, citing *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

#### d. The Board Did Not Ignore Sisvel's Evidence, but ConcludedThere Was a Reasonable Expectation of Success

Sisvel's second argument rests on the allegation that the Board ignored evidence and arguments Sisvel advanced. To the extent that Sisvel's complaint lay in the Board not addressing every aspect of Sisvel's arguments or its expert's testimony in minute detail, this argument is misplaced. The Board was required to, and did, explain itself sufficiently to allow for effective judicial review of its correct decision that the claims were invalid. *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prods., Inc. v. Matal,* 872 F.3d 1290, 1296 n.1 (Fed. Cir. 2017) (*en banc*). The Board was not required to address every passing argument raised by Sisvel or explain every possible reason supporting its conclusion. *Id.*; *see also Yeda Research v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018) ("[T]he Board is not required to address every argument raised by a party or explain every possible reason supporting its

conclusion.”). The Board considered Sisvel’s contrary arguments and adequately explained why it found them unpersuasive.

Sisvel has a high burden for this appeal—it has to do more than show a reasonable person could have found in its favor. *In re Kahn*, 441 F.3d 977, 989 (Fed. Cir. 2006). Rather, Sisvel has to show that no reasonable fact finder could have accepted that the evidence supports the Board’s finding. *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1339 (Fed. Cir. 2020). It has not met that burden.

Indeed, the evidence introduced during the *inter partes* review below clearly demonstrates that the Board’s decisions were correct and did not unfairly disregard Sisvel’s arguments. Sisvel’s arguments were (and remain) wrong and unsupported by the evidence.

Appellant argues in its principal brief that the Board disregarded the fact that Samsung does not provide allegedly necessary calculations to support that “all 1s would be a good candidate.” Appx1744; Appellant Brief at 2. As is apparent from the claim language, no such equations are recited in the claims. There is no requirement in law, that supporting calculations not recited by the claims must be disclosed by prior art, as argued by Appellant. In fact, this Court has previously found that when references promote something as a “good candidate,” and this is supported by expert testimony that a finding of non-obviousness is clear error. *Bayer Pharma AG v. Watson Labs., Inc.*, 874 F.3d 1316, 1321-1322 (Fed. Cir. 2017). The Board made no such error here.

Samsung clearly and expressly states that a field filled with all 1s is a "good candidate" for SPS deactivation (Appx1744), and Appellees' expert agreed, testifying that no unclaimed calculations are needed if all 1s are used. Appx2537, 80:12-15 ("Again, with the sentence that follows that all ones could be a good candidate. Frankly, it makes it more simple and it would be easier to scan for."); Appx2539, 82:2-24 ("It's describing Samsung teaches the RB assignment field that there's unused code points and there's code points in the RB assignment field and that's the RIB assignment field. And it's listing the number of code points that are listed for each different sized system based on the number – on its bandwidth and they're listing what the unused code points are. And the essence of this proposal is to say that any one of these unused code points could be used to indicate to the UE that the SPS resource is being released. And they're just giving examples of how many are available for each of the different sized systems. And then they're saying, to make it simple, all ones could be a good candidate…"); Appx2540, 83:23- Appx2541, 84:5 ("And frankly, that's why I believe Samsung is saying in the next sentence; to make the relevant text simple, all ones could be a good candidate. Meaning, all ones are a good candidate, it's not the only one, but you don't have to calculate anything if you use all ones."); Appx02544, 87:18- Appx02545, 88:15 ("Well, can you think of any scenario where a field with all ones would be valid? . . . All ones would be typically the maximum value; however, as I was clarifying for our question, when you refer to an RB assignment for SPS over the PDCCH channel, all ones is not a valid value. So is there any situation where an

RIV filled with all ones would be valid: … Not if the value of all ones is sent in regard to an SPS command over the PDCCH."); Appx02549, 92:5-19 ("And those other examples, those would require additional calculations by POSITA to determine, correct? … Again, I said that typically, it starts with calculations; but a POSITA, in many cases would not need to do calculations. Typically, someone somewhere has generated a list for each of the valid RB assignments for each of the different sizes of LTE system and it would be a matter of just picking a value that was not on the list of valid RB assignments.").

Sisvel then faults the Board's Final Written Decision, arguing that it "stated simply that no calculations of unused code points prior to filling the 'first field' entirely with 1s was necessary because all that was required by the claims was simply inserting 1s into the first field without any predicate condition." Appellant Brief at 21, citing Appx 35. Sisvel also faults the Board's determination that "nothing was required to be calculated at all 'if you use all ones.'" Appellant Brief at 22, citing Appx2541 (84:4-5). However, the Board analysis was correct, and did not misunderstand the claims, the law, or Appellant's arguments. Appellants Brief at 22.

Sisvel's implies that the Board did not determine filling the first field with 1s would actually function as an SPS deactivation condition. Appellant Brief at 22. Sisvel argues that the claims must be interpreted from the perspective of a POSA. *Id.* Sisvel argues that to ensure "SPS deactivation would inherently require the very calculations that the Board said were not required at all." *Id.* at 23. Sisvel than goes on to cite self-serving and out-of-

context deposition quotes from its expert. *Id.* at 23-24. According to Sisvel, this evidence was ignored by the Board. *Id.* at 24. That is incorrect. The Board did consider Sisvel's evidence and was not persuaded, instead choosing to properly rely on the ample contradictory evidence, as cited above. Specifically, the Board rightfully found that calculations were not claimed and were not necessary for a POSITA to use all 1s, as required by the claims. Appx33, citing Appx549- Appx550 (citing Appx1744, 1; Appx2536, 79:9-Appx2537, 80:7; Appx2564, 107:17- Appx2565, 108:13) ("Petitioner asserts that its expert testified that one could easily determine the unused code points with Samsung's Table 1."). The Board also noted that Samsung teaches a solution and that a POSA would have a reasonable expectation of success in using all 1s based on Samsung's teachings. Appx34, citing Appx938, ⁋173-Appx939, ⁋174.

Sisvel further argues that the Board failed to provide sufficiently detailed explanation for its rejection of Sisvel's arguments. Appellant Brief at 25. This is also not true. In response to Sisvel's arguments that the prior art must also disclose various unclaimed calculations, the Board correctly noted that "[c]laim 1 does not require performing any calculations…Nor does the claim specify any particular length of the field based on any calculations." Appx35. The Board also noted evidence, stating "[i]t is a matter of simple subtraction to figure out the invalid points, if that was required," and testimony that "use one of multiple methods to determine what those other unused or invalid code points would be." Appx35, citing Appx546-547; Appx2575, 118:14-22. The

Board further noted that "Samsung's proposal to use all 1s envisions the need for different length fields of 1s" because Samsung teaches "different numbers of resource blocks are used depending on system bandwidth." Appx35, citing Appx01744, Table 1. The Board, in making its assessment that a POSITA would not need to do calculations when relying on Samsung, relied on Appellee's expert. Appx36, citing Appx2550, 93:11-16 ("So any one of those unused code points could be used to release the SPS resource with the UE and they're just saying to make it simple, that, let's just use all ones and not have to figure out which one of these other unused code points we should use."); Appx2541, 84:4-5("[Y]ou don't have to calculate anything if you use all ones."). The Board also cited to cases to support its conclusion that Samsung in view of Dahlman teaches the required claims. Appx36, citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."), *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (evidence must show that the combination was "uniquely challenging or difficult for one of ordinary skill in the art").

The Board also explained why it refused to rely on Appellant's expert, who opined that that using all 1s would leave doubt about SPS release. Appx37. The Board noted that the law is that "the expectation of success need only be reasonable, not absolute." *Id.*; *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). Appellant's expert

attempted to exclude prior art that he alleged would not provide certainty of success. Appx37-38.

The Board grounded its analysis not only on Appellees' expert's testimony, but the Board also correctly relied on the prior art itself to show the simplicity of the claimed method. Appx37. The Board, for example, noted that "Samsung presents its solution as 'a simple release mechanism and that 'any of the unused code points could indicate' the release and 'all 1s could be a good candidate.'" Appx37, citing Appx1744. The Board also noted that Appellant's expert testimony, relied on by Appellant, was "factually unsupported testimony" and that "there is no evidence of record supporting the contention that Samsung's proposal would not work." Appx37. Accordingly, the Board did not credit Appellant's expert's testimony. Appx37-38. The Board also noted that the Samsung was a "3GPP member" "indicat[ing] a level of seriousness in the proposal and is itself evidence that one of ordinary skill in the art would have seen the proposal as having a reasonable expectation of success when combined with a functioning 3GPP system, like that described in Dahlman." Appx38, citing Appx1744; Appx2279, 87:4-6.

Sisvel states that the failure to consider whether a POSITA would need to perform calculations to determine if all 1s would work is a failure to address "key arguments," which should cause this court to vacate. Appellant Brief at 26. However, as discussed above, the Board did consider the issues raised by Sisvel. The Board, however, after reviewing all the evidence, sided with Appellees. In fact, the Board spent eight pages

explaining and justifying its determination that all 1s would have been obvious. Appx32-39. Despite Sisvel's protestations, the Board did not err by failing to analyze the parties' arguments and justify its reasoning.

Sisvel also argues that the Board must have misunderstood Sisvel's argument. Appellant Brief at 26-27. The Board did not misunderstand— it considered the relevant evidence regarding Sisvel's argument that the claims needed certain calculations to be executed or one would need to look to the '279 patent to perform those calculations. This is all described in the Board's analysis and will not be repeated again. Appx24-26; Appx546-547; Appx2575, 118:14-22.

As such, Sisvel's argument that the Board explicitly stated it would not consider the relevant evidence raised by Sisvel (and that the Board misconstrued Appellant's arguments) does not withstand scrutiny. Appellant Brief at 27. As discussed above, the Board considered Sisvel's arguments and determined that Appellees' evidence was better. The Board is entitled to weigh the credibility of expert witnesses. *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1358 (Fed. Cir. 2018). Indeed, this Court is to defer to the Board's finding in that regard. *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010) ("We defer to the Board's findings concerning the credibility of expert witnesses.").

Sisvel tries to rely on Dr. Smith's testimony that patentee's deactivation method taught by the '279 patent was mathematically proven and such proof would be a prerequisite for a reasonable expectation of success. Appellant Brief at 28. However, the

Board correctly found this to be "factually unsupported testimony." Appx37. The Board cited case law that reasonable certainty of success was what was necessary to show invalidity here, but Sisvel argued that "mathematical certainty is what a POSITA would demand" with no such supporting case law. Appellant Brief at 28-29; Appx37.

Sisvel then mischaracterizes the deposition testimony of Appellants' expert Mr. Lanning by implying he testified that Samsung would not have left a POSITA with no doubt that all 1s would be a good candidate. Appellant Brief at 29. However, Sisvel's quotes are taken out of context. Mr. Lanning testified that no calculations would be necessary if one were to use all 1s, as claimed by the '279 patent, and that there was no support in Samsung for using other values besides all 1s. Appx36, citing Appx2550, 93:11-16 ("So any one of those unused code points could be used to release the SPS resource with the UE and they're saying to make it simple that, let's just use all ones and not have to figure out which one of these other unused code points we should use."), Appx02541, 84:3-5("[Y]ou don't have to calculate anything if you use all ones."). The quotes relied on by Sisvel for the suggestion that Samsung lacked "lists of values used in calculation to determine an always-invalid SPS deactivation value" was actually a quote referring to "other examples" other than all 1s. Appx2443, 02:5-24. Next, Sisvel paraphrases Mr. Lanning as saying "Samsung lacks a chart usable by a POSITA to determine whether a number could be used to fill a RIF field and trigger deactivation." Appellant Brief at 29. However, Mr. Lanning also clarified "I didn't even consider your

question because I was analyzing the claim where there was all ones put in the RIV field. To me, I didn't need to do all that other analysis for the question your asking because it's clear Samsung is saying all ones could be a good candidate to put in the resource block assignment field. To me, that very clearly meets the claim language. The claim language didn't have anything to do with maximum numbers of any type." Appx2570, 113:20-Appx2571, 114:8. This is because Samsung's only proposal is to use all 1s (Appx01744), which is all that the claims require. Contrary to Sisvel's assertion, and as explained above, the Board did not refuse to consider Sisvel's arguments; it considered the weight of the evidence, and that evidence was in Appellee's favor.

#### *2. The Board's Finding That the Use of All "1s" Would Have Been Obvious in View of Dahlman and Samsung is Supported by Substantial Evidence*

The Board relied on Samsung's express disclosure that "all 1s could be a good candidate," and found that rather than cutting against it, Samsung's statements "rather suggested" all 1s is a good option. Appellant Brief at 30, citing Appx36; Appx39. The Board also gave weight to the fact that the Samsung proposal came from a 3GPP member, which "indicates a level of seriousness in the proposal and is itself evidence that one of ordinary skill in the art would have seen the proposal as having a reasonable expectation of success . . ." Appellant Brief at 30, citing Appx38. The Board also reasoned that Samsung's solution was "simple," and "offers no hesitation or doubt to a POSITA, and is confirmed by Mr. Lanning." Appellant Brief at 30, citing Appx37. However, as discussed

below, the Board did not make its conclusions based on those primary reasons alone, as suggested by Sisvel. Appellant Brief at 30-31. For example, the Board also relied on Samsung and expert testimony that using all 1s would avoid calculations and be a simple choice, would be expected to work, would be a good candidate, and is a simple release mechanism. Appx36-37. This Court should defer to the Board's interpretation of Samsung, including whether it discloses a first field filled with 1s. *See Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) ("What the prior art teaches . . . [is a] question[] of fact.").

Sisvel argues that calling something a "good candidate" means it "*might*" serve as a viable candidate. Appellant Brief at 31. However, the Board found that Mr. Lanning's testimony was persuasive that "the use of all 1s as taught by Samsung would have been expected to work with Dahlman, including because Samsung uses the same DCI format for signaling the SPS deactivation that Dahlman expressly utilizes. Appx37, citing Appx939 at ¶174. The Board also reviewed Appellant's expert's testimony and found that it was "factually unsupported testimony" and "there is no evidence of record supporting the contention that Samsung's proposal would not work." Appx37. The Board then reiterated the credible evidence that "Samsung states: 'Any of the unused code point[s] could indicate SPS resource release. To make the relevant text simple, all 1s could be a good candidate.'" Appx38, citing Appx1744. The Board further analyzed Sisvel's expert's

testimony indicating that all 1s "would not be an absolute bar against its use for indicating SPS deactivation" even if all 1s were a valid value rather than an invalid value. Appx38.

Sisvel argues that the Board's theories were flatly rebutted by Dr. Smith's testimony, which Sisvel cites in length. Appellant Brief at 31. However, the Board considered this testimony and found it "factually unsupported." Appx37. Sisvel relies on Dr. Smith's testimony that whether a code point is invalid depends on a given "chessboard['s]" size. Appellant Brief at 31-32. However, the Board considered this theory and relied on Appellees' evidence. For instance, the Board noted that "[c]laim 1 does not require performing any calculations…Nor does the claim specify any particular length of the field based on any calculations." Appx35. The Board also noted other evidence stating "[i]t is a matter of simple subtraction to figure out the invalid points, if that was required" and testimony that "use of one of multiple methods to determine what those other unused or invalid code points would be." Appx35, citing Appx546-547; Appx2575, 118:14-22. The Board further noted that "Samsung's proposal to use all 1s envisions the need for different length fields of 1s" because Samsung teaches "different numbers of resource blocks are used depending on system bandwidth." Appx35, citing Appx01744, Table 1. The Board has a duty to "consider all evidence of obviousness and nonobviousness before reaching a determination," and that is exactly what the Board did here. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077 (Fed. Cir.

2012). In short, the Board's determination was supported by substantial evidence and should be affirmed.

Sisvel argues that calling Appellant's expert's testimony "factually unsupported" was improper because the Board had a duty to examine the record as a whole, taking into account both the evidence that justifies and detracts from an agency opinion. Appellant Brief at 32-33. However, this is what the Board did, as explained above. The Board reviewed Sisvel's expert's opinion that the size of the "chessboard" matters and found it contradicted by factually supported evidence. Appx38. For example, as explained above, the Board considered that (1) the claims do not require performing any calculation or any particular length of field based on calculations, (2) it is a matter if simple subtraction to figure out the invalid points, if that was required, and (3) there are multiple methods to determine what the invalid code words might be. Appx35.

Further, contrary to Sisvel's assertion (Appellant Brief at 34), Appellees' expert Mr. Lanning's testimony contradicting Sisvel's expert was factually supported. Mr. Lanning's testimony that the use of all 1s "would avoid any calculation and be a simple choice" was supported by evidence. Appx36, citing Appx2550. For instance, the Board noted at Apx00033, Mr. Lanning relied on Samsung itself, which clearly teaches "[a]ny of the unused code point[s] could indicate the SPS resource release"( Appx00034; Appx1744), and that "all 1s could be a good candidate" (Appx01744, 1; Appx02570, 113:24–Appx02571, 114:4) and Samsung's Table 1 itself which Mr. Lanning testified one could

easily determine the unused code points (Appx01744, 1; Appx02536, 79:9-Appx02537, 80:7, Appx02564, 107:17-Appx02565, 108:13). Moreover, Mr. Lanning relied on the ’279 patent as well, which does not require finding invalid values for the “first field” (Appx00157, 26:10-17; Appx02570, 113:15-Appx02571, 114:8), which the Board also relied on. Appx33. The Board also noted that Samsung itself proposes “**all 1s in RB assignment field in SPS resource allocation DCI releases the SPS resource currently configured**.” Appx34 (emphasis in original), citing Appx1744, 1. Mr. Lanning also testified that the right-hand column of Samsung Table 1 itself lists the number of unused code points that could be used for a release message based on the system bandwidth. Appx35, citing Appx2536,79:14-19. The Board noted that “Samsung acknowledges that different numbers of resource blocks are used depending on system bandwidth, and so Samsung’s proposal to use all 1s envisions the need for different length fields of 1s. Appx35, citing Appx1744, Table 1.

As a result of all of this evidence, the Board then reasonably relied on Mr. Lanning’s testimony that using all 1s would avoid any calculation and be a simple choice. Appx00036, citing Appx2550, 93:11-16 (“So any one of those unused code points could be used to release the SPS resource with the UE and they’re just saying to make it simple that, let’s just use all ones and not have to figure out which one of these other unused code points we should use.”); Appx2541, 84:4-5 (“[Y]ou don’t have to calculate anything if you use all ones.”). In short, Samsung’s solution negates the need to do any of the calculations

taught by the '279 patent because by doing so you are filling unused code words with 1s which provides an invalid code word. Therefore, the Board's analysis was well grounded on Mr. Lanning's factually supported testimony, and on the disclosure of Samsung itself.

Sisvel then argues that the Board was unable to identify any evidence of a reasonable expectation of success. Appellant Brief at 35. Appellant seems to argue there needs to be proof that the prior art absolutely works as intended to be reliable. *Id.* However, this is not the standard, the expectation of success need only be reasonable, not absolute. *See* Appx37, citing *Pfizer, Inc.*, 480 F.3d at 1364. Sisvel tries to counter this court's precedent with the *Cyclobenzaprine* case which noted that expectation of success can be refuted with "actual reports of failure." Appellant Brief at 35-36, citing *In re Cyclobenzaprine*, 676 F.3d at 1081. Importantly, Sisvel never points to any evidence of "actual reports of failure." Indeed, in the district court litigation, Sisvel asserts that all 1s for SPS deactivation is now part of relevant standards.

Therefore, contrary to Sisvel's argument, the Board did not ignore Sisvel's factually unsupported allegations, it provided a reasoned analysis on why it relied on Appellees' arguments over Sisvel's. Appellant Brief at 36-37. Quite simply, the Board did not short-cut its analysis.

Ample evidence, far exceeding the "substantial evidence" threshold supports the Board's obviousness determinations. Sisvel fails to show that the Board's determination was incorrect, much less that the Board erred as a matter of law.

## VI. CONCLUSION & PRAYER FOR RELIEF

The judgment of the Board should be affirmed.

Dated: April 19 2023

Respectfully submitted,

PV LAW LLP

By: /s/ Jeremy D. Peterson
Jeremy D. Peterson
Bradford A. Cangro
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, DC 20015

**COUNSEL FOR APPELLEES TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC., AND TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED**

Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth St., Suite 1400
Denver, Colorado
Phone: (303) 291–2388
E-mail: atessar@perkinscoie.com

/s/ Daniel Tyler Keese
Daniel Tyler Keese
PERKINS COIE LLP
1120 NW Couch St
Portland, Oregon
Phone: (503) 727–2132
E-mail: dkeese@perkinscoie.com

**COUNSEL FOR APPELLEE SIERRA WIRELESS, INC.**

Guy Yonay
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0800
gyonay@pearlcohen.com

/s/ Kyle Auteri
Kyle Auteri
**PEARL COHEN ZEDEK LATZER BARATZ LLP**
7 Times Square, 19th Fl.,
New York, NY 1036
(646) 878–0824
kauteri@pearlcohen.com

**COUNSEL FOR APPELLEE THALES DIS AIS DEUTSCHLAND GMBH**

/s/ Brian P. Bozzo
Brian P. Bozzo
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-6500

Benjamin E. Weed
Gina A. Johnson
K&L GATES LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 372-1121

**COUNSEL FOR APPELLEE HONEYWELL INTERNATIONAL INC.**

## VII. CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7828 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 (version 2110) in 14-point Times New Roman font.

Dated: April 19, 2023

/s/ Jeremy D. Peterson
Jeremy D. Peterson
PV LAW LLP
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, DC 20015

## VIII. CERTIFICATE OF AUTHORITY

I certify under penalty of perjury under the laws of the United States that I have the authority of Daniel Keese, counsel for Appelle Sierra Wireless, Inc., Kyle Auteri, counsel for Appellee Thales Dis AIS Deutschland GmbH, and Brian Bozzo, counsel for Appellee Honeywell International Inc., to file this document with their electronic signatures.

Dated: April 19, 2023

/s/ Jeremy D. Peterson
Jeremy D. Peterson