No. 2023-1123

# United States Court of Appeals for the Federal Circuit

SISVEL S.p.A.,

*Appellant,*

v.

TCT MOBILE INTERNATIONAL LIMITED, TCT MOBILE, INC., TCT MOBILE (US) INC., TCT MOBILE (US) HOLDINGS, INC., TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, HONEYWELL INTERNATIONAL INC., SIERRA WIRELESS, INC., THALES DIS AIS DEUTSCHLAND GMBH,

*Appellees.*

On appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2021-00678

## REPLY BRIEF OF APPELLANT SISVEL S.P.A.

Timothy Devlin
tdevlin@devlinlawfirm.com
Andrew DeMarco
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Attorneys for Appellant Sisvel S.p.A.*

May 31, 2023

Claim 1 of U.S. Patent No. 8,971,279 (the "'279 patent"):

1. A method for deactivating Semi-Persistent Scheduling (SPS) transmission in a wireless mobile communication system, the method comprising:

> Performing, by a User Equipment (UE), a SPS transmission at an interval of a subframe period configured by a radio resource control (RRC) signal;
>
> receiving, by the UE, a Physical Downlink Control Channel (PDCCH_signal with a Radio Network Temporary Identifier (RNTI), where in the PDCCH signal includes a first field related to a resource allocate; and
>
> performing a procedure for deactivating the SPS transmission if the PDCCH signal satisfies conditions for SPS deactivation,
>
> wherein the conditions for the SPS deactivation include: the RNTI is a SPS Cell RNTI (SPS C-RNTI); and the first field is entirely filled with '1'.

Appx157 (cl. 1).

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1123

**Short Case Caption** Sisvel S.p.A. v. TCT Mobile International Limited

**Filing Party/Entity** Sisvel S.p.A.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/31/2023

Signature: /s/ Timothy Devlin

Name: Timothy Devlin

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Sisvel S.p.A. | | Sisvel International S.A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Timothy Devlin (Devlin Law Firm) | Neil Benchell (Devlin Law Firm) | Andrew DeMarco (Devlin Law Firm) |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Remand Is Warranted Because The Board Misconstrued The Claims And Sisvel's Argument And Supporting Evidence .......... 3

1. Sisvel Does Not Assert That The Claims Require Calculations Be Performed .......... 4

2. Sisvel's Reasonable Expectation Of Success Argument Below Was Not Made In "Passing" .......... 10

3. The Board Did Not Properly Address And Reject Sisvel's Reasonable Expectation Of Success Argument .......... 12

4. The Testimony Of Honeywell's Expert Supports Sisvel's Arguments .......... 14

5. Sisvel's Arguments Warrant Vacatur On All Grounds Of Invalidity Found By The Board .......... 17

B. The Board's Finding That the Use of All "1s" Would Have Been Obvious in View of Dahlman and Samsung is Not Supported by Substantial Evidence .......... 20

III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......... 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
694 F.3d 1312 (Fed. Cir. 2012). .......... 13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
314 F.3d 1313 (Fed. Cir. 2003). .......... 7, 8

*Apple Inc. v. Corephotonics, Ltd.*,
861 F. App'x 443 (Fed. Cir. 2021). .......... 9

*Applications in Internet Time LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018). .......... 7, 10, 14

*Belk, Inc. v. Meyer Corp.*,
679 F.3d 146 (4th Cir. 2012). .......... 19

*Impax Labs., Inc. v. Aventis Pharm. Inc.*,
545 F.3d 1312 (Fed. Cir. 2008). .......... 9

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012). .......... 5, 7, 8, 26

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012). .......... 17

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002). .......... 6

*Kao Corp. v. Unilever United States, Inc.*
441 F.3d 963 (Fed. Cir. 2006). .......... 19

*Martinez-Serrano v. INS*,
94 F.3d 1256 (9th Cir. 1996). .......... 17

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007) .......... 25

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*,
786 F.3d 960 (Fed. Cir. 2015). .......... 6, 7, 10

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943). .......... 7

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947). .......... 7

*Simpson v. Union Oil Co.*,
411 F.2d 897 (9th Cir. 1969). .......... 17

**Page(s)**

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006)....................17

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016)....................12

*United States v. Goforth*,
465 F.3d 730 (6th Cir. 2006)....................19

*United States v. Leeson*,
453 F.3d 631 (4th Cir. 2006)....................19

*Yeda Research v. Mylan Pharms. Inc.*,
906 F.3d 1031 (Fed. Cir. 2018)....................12

# I. INTRODUCTION

Honeywell provides no meritorious rebuttal to Sisvel's main arguments. It instead largely focuses on issues either not in dispute or not pertinent to this appeal.

For instance, the Board was forthright in declining to consider Sisvel's main argument that the asserted prior art failed to provide a POSITA with the basis for a reasonable expectation of success. As the Board put it, "[c]laim 1 does not require performing any calculations prior to filling the 'first field' entirely with 1s" nor "specify any particular length of the field based on any calculations" Appx35. Therefore, declared the Board, it "need *not* settle the parties' dispute as to whether one of ordinary skill in the art would have been capable of calculating unused code points in Samsung that could be used as SPS deactivation values."[1] Appx35.

But as Sisvel explained, it never raised an argument that the claims "require performing any calculations prior to filling the 'first field' entirely with 1s." The point was (and is) that a POSITA would not have had a reasonable expectation of success in doing so. No POSITA in the relevant field would have been motivated to use all 1s *and* reasonably expect success based on the prior art. That is because, as taught by effectively unrebutted expert tesitmony, a POSITA would have needed the mathematical assurance that all 1s would be an "always invalid" value in order to actually consider the proposal in the first instance and have a reasonable expectation

[1] Unless otherwise noted, all emphasis in this brief is added.

of success in using all 1s to function for SPS deactivation. *See* Principal Brief ("BB") at 26-29. Creating a 3G cell system is not a game of horseshoes: close doesn't count. No POSITA would have built and implemented a system with all 1s without the (inventive) proof that the patentees here supplied regarding why and how a value like all 1s could be used for SPS deactivation because it would always be invalid.

*That* was what Sisvel and its expert said, and *that* was the argument the Board did not adequately consider—not one about whether the claims required such calculations to be performed each and every time. Indeed, even where the Board appeared poised to potentially address this argument on the merits, it veered to conclusory statements that simply dismissed Sisvel's expert testimony without substantive explanation. This was procedural and legal error (that also created a decision unsupported by the law and substantial evidence) and warrants remand. *See* Appx35; BB at 26-27.

Rather than respond to this deficiency, though, Honeywell focuses instead on the content of the asserted prior art. For example, Honeywell provides a list of arguments *not* made by Sisvel regarding what the prior art discloses. But again, this path simply retreads the Board's mistake. Sisvel's argument (relevant here) was not aimed at what the prior art disclosed, but what it did *not*, namely, the inventive proof that all 1s would be an "always invalid" value, which was the very thing that Sisvel's

expert testimony said that a POSITA would need to have a reasonable expectation of success. The Board's refusal to actually consider that argument and associated evidence requires remand.

Nor does Honeywell meaningfully engage with Sisvel's other arguments regarding the lack of substantial evidence supporting the Board's decision. Honeywell continues to repeat the same errors of the Board by misreading the import of Dr. Smith's testimony and application of the correct legal standard for reasonable expectation of success.

Remand is warranted.

## II. ARGUMENT

### A. Remand Is Warranted Because The Board Misconstrued The Claims And Sisvel's Argument And Supporting Evidence

In response to Sisvel's first argument on appeal, Honeywell asserts that: (1) the Board properly found that practicing the claims does not require that calculations be performed to determine that filling a field with all 1s is always invalid; (2) Sisvel's arguments below regarding reasonable expectation of success were a "passing argument" not warranting consideration by the Board; (3) if that "passing argument" warranted response, the Board correctly determined that Sisvel's arguments were not supported by the record in any event; (4) Sisvel removed important "context" from the testimony of Honeywell's expert, Mr. Lanning; and (5) Sisvel's arguments do not warrant reversal on all Grounds adopted

by the Board.[2] *See* Response Brief ("RB") at 5, 15-27. None of Honeywell's arguments has merit.

### 1. Sisvel Does Not Assert That The Claims Require Calculations Be Performed

Honeywell's first response merely repeats the Board's error of oddly demanding that every factor affecting reasonable expectation of success be a claim limitation. But the point is not what is claimed; it is what the prior art would teach a POSITA to do with a reasonable expectation of success.

Sisvel did not argue that any particular calculation is required to practice the claimed invention. *See* Response Br. ("RB") at 15-16; Appx479-481; Appx481-483; Appx576; Appx584-585. Rather, as Sisvel argued below (and here on appeal), a POSITA viewing the asserted prior art would not have found using all "1s" in a RIV field as a specific value for SPS deactivation to be obvious because the asserted prior art contained no evidence of a reasonable expectation of success for the use of such a value. As Sisvel explained (BB at 21, 23-24; Appx2262), a POSITA would

---

[2] Honeywell also provides a short list of points that it asserts Sisvel has not argued, including the scope of the claims and that how the prior art supposedly disclosed a suggestion to use all 1s. *See* RB at 14. These additional arguments are not relevant to the reasonable expectation of success issue on appeal. Sisvel presented effectively unrebutted expert testimony that a POSITA would not had a reasonable expectation of success implementing the combination of prior art elements advanced by Honeywell. The Board did not properly consider that evidence and associated argument (just like Honeywell does again on appeal). Remand is warranted at least on this basis.

need to know that an SPS deactivation value (like all 1s) would work in all cases in order to reasonably expect success in using it because of its importance to the cellular communications system. That does not mean that *the claims* require such calculations—such calculations are required for a POSITA to expect reasonable success in making and using the claimed invention, which uses all 1s because *the inventors* proved that their use always works. *See* BB at 23-24. The absence of such (mathematical) assurance in the prior art is what matters to a POSITA, as Dr. Smith explained, and is what (among other things) proves non-obviousness here. *See also, e.g.*, Appx476; Appx481 (asserting that neither Nokia nor Samsung provide examples of calculations providing a reasonable expectation of success to a POSITA in the use of their proposed values); BB 21, 24.

Rather than respond to that argument, though, Honeywell repeats the Board's error of ignoring it. In support, Honeywell cites (at RB at 16, 18) *In re Antor Media Corp.* But that case undermines Honeywell's position and strengthens Sisvel's. As Honeywell notes (at RB at 16), whether undue experimentation by a POSITA is required depends on the "nature of the invention and the state of the art." *In re Antor Media Corp.*, 689 F.3d 1282, 1289-1290 (Fed. Cir. 2012). The arguments and evidence raised by Sisvel and ignored by the Board go directly to the nature of the invention and the state of the art and what is factually required for a reasonable expectation of success.

For instance, Sisvel's expert, Dr. Smith, repeatedly explained that a POSITA would not use a condition for SPS deactivation in this field unless there was *no doubt* that such a condition would always work. As he explained: "If there's *any doubt* that all 1s will not work, you can't use it." Appx2277 at 85:19-20. Dr. Smith also provided testimony that, to a POSITA, this level of certainty needed mathematical proof that the use of "all 1s" in a field indicating SPS deactivation would be invalid in all circumstances. *See* Appx2261-2262 at 69:12-70:17; Appx2277 at 85:15-20; *see also* Appx2440-2444. And Dr. Smith specifically testified that neither Nokia nor Samsung provided such proof that "all 1's" would have been feasible for use given the field and state of the art. *See* Appx2434-2439; Appx2440-2444; *see also* BB at 23-24 (discussing Dr. Smith's testimony regarding Nokia and Samsung). As Dr. Smith informed the Board (in testimony never directly rebutted), the assurances required for a POSITA to have a reasonable expectation of success did not exist until the inventors disclosed them in the '279 patent. *See* Appx2282-2283 at 90:12-91:10. The Board improperly failed to consider that evidence, which warrants remand. *See, e.g.*, *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015) (Board must provide a full examination of the record, "taking into account both the evidence that justifies and detracts from an agency's opinion"); *In re Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002) ("The Board's findings must extend to all material facts …."); *see also Applications in Internet Time LLC v. RPX Corp.*, 897

F.3d 1336, 1353 (Fed. Cir. 2018) (quoting *Princeton Vanguard,* 786 F.3d at 970) ("Just as it may not short-cut its legal analysis, the Board may not short-cut its consideration of the factual record before it.").

Honeywell's reliance on *Amgen Inc. v. Hoechst Marion Roussel, Inc.,*314 F.3d 1313 (Fed. Cir. 2003) and *In re Antor Media Corp.* to argue that Samsung's teaching of all 1s is "presumed enabled" is likewise inapposite. As an initial matter, Honeywell never made this argument below, nor did the Board rely on any such presumption. It is therefore forfeited and outside any potential basis for affirmance. *See, e.g.*, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (appellate courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency."); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (appellate courts cannot affirm agency action based on a new "determination of fact" that the "agency alone is authorized to make and which it has not made").

In any event, Honeywell is wrong. This Court's precedent does *not* hold that all "prior art patents and printed publications are presumed enabling" and that it is the patentee's burden to prove otherwise. RB 17. *Amgen*'s holding regarding a preemption of enablement only applies to *patents*. *See* 314 F.3d at 1355. Samsung is not a patent. And Honeywell truncates this Court's opinion to imply that *Amgen*'s could properly reach beyond patents. Honeywell's brief (at 17-18):

> *see also Amgen Inc.*, 314 F.3d at n. 22 ("We note that by logical extension, our reasoning here might also apply to prior art printed publications as well.")

This Court's full statement in the cited footnote (314 F.3d at 1355 n. 22):

> We note that by logical extension, our reasoning here might also apply to prior art printed publications as well, ***but*** *as Sugimoto is a patent* ***we need not and do not so decide today***.

*Amgen* is of no help to Honeywell.

Nor is *In re Antor Media* helpful to Honeywell either—and it also demonstrates that *Amgen*'s reasoning should *not* be extended to printed prior art publications in adversarial proceedings. In *In re Antor Media*, this Court held that prior art references and patents are presumed enabled *during prosecution*—not in an adversarial proceeding like the IPR here. 689 F.3d at 1288. The Court's explanation (even in the precedent cited in *Amgen*) centered around procedural convenience and administrative reality because it would be, *inter alia*, "overly cumbersome, perhaps even impossible, to impose on the PTO the burden of showing that a cited piece of prior art is enabling"—"[t]he PTO does not have laboratories for testing disclosures for enablement." *Id.* No such administrative impediments exist to a private party (or group of very well-financed parties, as here) tasked with proving enablement of a printed publication in an adversarial proceeding. Indeed, such parties (like the IPR petitioners here) routinely retain experts (as was done here) who can do just that. And non-patent prior-art publications are not imbued with any sort of inherent

reliability by having been examined or passed upon by the PTO (as an issued United States patent would be, per *Amgen*'s reasoning). There is thus no logical reason nor precedent that a presumption of enablement attaches in an adversarial IPR proceeding to anything in the public realm that is merely published (a very low threshold these days with the Internet).[3]

But even if such a presumption somehow were to apply here, it was clearly overcome. Dr. Smith provided extensive (and effectively unrebutted) evidence that Honeywell's references would not have been enabling to a POSITA given the nature of the invention and the state of the art, as discussed above (e.g., the lack of calculations proving that all 1s would actually work in all circumstances as required, not by the claims, but for a reasonable expectation of success). *See* Appx2436-2442 at ¶¶ 63-82; Appx2261-2262 (69:12-70:17); Appx2277 (85:15-20). Rather than

[3] In a non-precedential decision, a panel of this Court held that a published foreign patent application qualified as presumptively enabled and stated that "[i]t is well-established that prior art patents and printed publications . . . are presumed enabling." *Apple Inc. v. Corephotonics, Ltd.*, 861 F. App'x 443, 449 (Fed. Cir. 2021). Samsung, of course, is not a foreign patent application. Also, that non-precedential opinion did not cite any precedential opinion of this Court holding the same. *See id.* (citing *Amgen* and *In re Antor Media*, which, as discussed, concerned prior art patents and prosecution, respectively, and *Impax Labs., Inc. v. Aventis Pharm. Inc.*, 545 F.3d 1312 (Fed. Cir. 2008), which concerned a prior art patent). And, as discussed, there is good reason such precedent does not exist—there is no logical or reasonable basis to believe something works simply because it is discussed in print or posted on the Internet, nor any practical reason to not place the burden of proving enablement for such things on well-financed infringers who bear the overall burden of persuasion to invalidate a presumptively valid United States patent in both IPRs and district court actions.

address any of Dr. Smith's directly unrebutted testimony, the Board simply stated that "the record lacks any evidence to the contrary or that using all 1s in an RB allocation field as employed for SPS scheduling in Dahlman would have been 'uniquely challenging or difficult for one of ordinary skill in the art.'" Appx36. That unexplained conclusion is little more than the Board's outright refusal to consider Sisvel's argument and Dr. Smith's testimony. That was procedural and legal error, and renders the Board's findings devoid of substantial evidentiary support. Remand is warranted. *See Princeton Vanguard,* 786 F.3d at 970 (Board must provide a full examination of the record as a whole); *see also Applications in Internet Time LLC*, 897 F.3d at 1353 (Board may not short-cut its consideration of the factual record).

### 2. Sisvel's Reasonable Expectation Of Success Argument Below Was Not Made In "Passing"

Honeywell's second argument (that Sisvel's position regarding reasonable expectation of success was a "passing argument") hinges on a strained reading of the briefing below.

Sisvel asserted *multiple* times throughout its briefing to the Board that a POSITA would not have a reasonable expectation of success in view of the prior art lacking the proofs required for a POSITA to have *any* expectation of success, let alone a reasonable one, to use all 1s. *See, e.g.*, Appx479-481 (discussing the fact that a POSITA would not believe that Samsung's proposals would be feasible because the document lacks information for a POSITA to make the calculations

necessary to arrive at that conclusion); Appx481-483 (addressing the fact that Honeywell's own expert agrees that a POSITA could not calculate whether a RIV value could function or not function because the prior art lacked tables and equations for a POSITA to review); Appx576 (noting that Sisvel demonstrated that the '279 patent contained calculations and equations that determined that a RIV value could be feasibly used for SPS deactivation); Appx584-585 (noting that Dr. Smith provided unrebutted testimony that the Nokia reference's lack of explanation creates significant problems for a POSITA because it proposes a value of all 0s to fill a field that is *always valid* as opposed to *always invalid* and thus can *never* be used for SPS deactivation).

These were not the only arguments raised by Sisvel below, but they were central and not adequately considered because they were misconstrued by the Board to be a proposition that the claims somehow required such calculations be performed in the patented method. *See* Appx35. Honeywell suffers from the same misunderstanding of Sisvel's arguments, as Honeywell dedicates much of its response to the propriety of the Board's irrelevant finding that the claims do not require such calculations to be performed. *See* RB at 16-23.

There is thus no sound basis for Honeywell's contention that Sisvel's argument here on reasonable expectation was a minor "passing argument" not worthy of actual attention by the Board. Honeywell's reliance on *Synopsys* and *Yeda*

*Research* is also inapposite for that reason. *Cf. Yeda Research v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018) (finding that the Board need not address an argument referenced once in a single paragraph); *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016) (finding that the Board need not specifically consider a single figure when rendering an opinion otherwise addressing the entirety of a party's argument).

### 3. The Board Did Not Properly Address And Reject Sisvel's Reasonable Expectation Of Success Argument

Honeywell argues that the Board actually did address Sisvel's reasonable expectation of success argument and "correctly found [the evidence provided by Dr. Smith regarding reasonable expectation of success] to be 'factually unsupported testimony.'" RB at 25. Not so. Honeywell overlooks that the Board's reasoning simply ignores the substance of, and substantial support for, Dr. Smith's testimony.

Dr. Smith amply supported his testimony regarding a POSITA's need for mathematical underpinnings for a reasonable expectation of success by, for example, discussing the practical (and factual) considerations for a POSITA. *See, e.g.*, Appx2261-2262 (69:12–70:17) (discussing that an SPS deactivation value would need to be invalid under all circumstances and recognized for its intended purpose to function reliably); Appx2277 (85:15-20) (noting that the invention was made in the context of the worldwide phone system, and that, in this field, if there is any doubt as to whether something will work for SPS deactivation, a POSITA would not

use it). Dr. Smith further supported his testimony by noting the numerous equations and calculations that the ’279 patent provided to a POSITA—calculations wholly missing from any of the asserted prior art. *See* Appx2429-2433 at ¶¶ 32-47 (illustrating the mathematical proofs and value-table provided by the ’279 patent that demonstrate the use of all 1s for SPS deactivation will be viable in all use cases).

Such extensive testimony and argument provided by Sisvel’s expert witness is far from that which this Court has held does not have to be considered by a fact finder. This Court’s opinion in *ActiveVideo Networks, Inc. v. Verizon* is instructive. There, this Court upheld the district court’s obviousness determination because Verizon’s expert provided conclusory and wholly unsupported evidence. *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012). For instance, Verizon’s expert provided inexplicable and cursory statements such as “when I add one, it doesn’t change the way the other works,” with no further support. *Id.* at 1327. In contrast here, Sisvel’s expert Dr. Smith did not simply declare an outcome to be true without explanation or support. As discussed, he provided well-founded (and never directly rebutted) expert testimony that a POSITA would not have had a reasonable expectation of success using all 1s because there was no assurance that it would work, and Dr. Smith explained specifically why such proof was needed, how it was absent from the prior art, and how the patentees were the first to provide it. *See, e.g.*, Appx2261-2262 at 69:12-70:17 (testifying that

for a POSITA to find a workable system in the prior art, a POSITA would need underlying evidence, absent in the prior art, that a value will always be recognized for its intended purpose); Appx2277 at 85:15-20 (stating that, in the context of cellular communications, mathematical calculations would be necessary for a POSITA to find a solution workable); Appx2441-2446 at ¶¶ 78-102 (explaining that a POSITA viewing the asserted prior art would lack a basis to understand what kind of value would even be usable for SPS deactivation, let alone that it could be done reliably).

Such well-supported and detailed testimony cannot be cursorily cast aside without substantive explanation by the Board. *See Applications in Internet Time, LLC*, 897 F.3d at 1353. Indeed, such treatment, beyond being procedural and legal error, highlights the lack of substantial evidence in support of the Board's respective findings. For all those reasons, this case should be remanded so that the Board may appropriately consider all the relevant evidence and arguments put before it.

#### 4. The Testimony Of Honeywell's Expert Supports Sisvel's Arguments

Honeywell asserts that Sisvel quotes Honeywell's expert "out of context." RB at 26. Not so. Sisvel noted that Mr. Lanning's testimony further supported Sisvel's arguments that a POSITA would not have had a reasonable expectation of success in using the asserted prior art to determine if filling a field with "all 1s" would be viable for use in a worldwide cellular system. *See* BB at 29. That was accurate. Mr.

Lanning's testimony (excepted below) supports the conclusion that Samsung does not contain the kinds of assurances that illustrate to a POSITA that using all 1s would reasonably be expected to succeed:

> Q. And those other examples, those would require additional calculations by POSITA to determine, correct?
>
> …
>
> A. Again, I said that typically, it starts with calculations; but a POSITA, in many cases would not need to do calculations. Typically, someone somewhere has generated a list for each valid RB assignments for each of the different sizes of LTE system and it would be a matter of picking a value that was not on the list of valid RB assignments.
>
> Q. And those lists you're referring to are not included in either the Nokia or Samsung reference, right?
>
> A. *No, the lists aren't included*.

Appx2549 at 92:5-24. Honeywell's expert thus effectively admitted that neither the Samsung nor the Nokia reference actually contained what he described as the list of valid and invalid values that would actually let a POSITA know if filling a field all with 1s would be a workable solution for SPS deactivation. *Id.* at 92:5-24. That is, neither Samsung nor Nokia contain the kind of assurances that would be "typically" expected by a POSITA to know that they could reasonably expect success in using a certain value (e.g., all 1s) for SPS deactivation. *See id.* at 92:5-24. Yet the Board did not appear to have weighed this evidence at all. *See* Appx35 (declining to consider whether a POSITA would have been able to determine a reasonable

expectation of success via calculating unused code points because of the lack of supporting information in the asserted prior art).

Honeywell also highlights statements from Mr. Lanning that are irrelevant to Sisvel's arguments. That Mr. Lanning also stated that "any one of those unused code points could be used to release the SPS resource with the UE and they're saying to make it simple that, let's just use all ones and not have to figure out which one of these other unused code points we should use" (RB at 26) has no bearing on whether the asserted prior art actually contained the necessary information to convey to a POSITA a reasonable expectation of success. Trying to "make it simple" without any actual assurance to demonstrate why the matter is actually so simple and would actually be expected to work is the very issue that Sisvel raised. As Dr. Smith explained, a POSITA would not accept the proposal without the assurances that even Mr. Lanning himself said were not present in either Samsung or Nokia.

There is no reasonable way to read Mr. Lanning's statements other than that the prior art failed to include any supporting calculations or charts. Indeed, Mr. Lanning's assertion that "let's just use all ones and not have to figure out which one of these other unused code points we should use" demonstrates classic hindsight bias. And it shows failure to consider or rebut Dr. Smith's testimony as to *why* such thinking would be anathema to a POSITA in the field, who would never just blindly

accept a value (such as all 1s) as an SPS deactivation value without actual assurances that it would work.

#### 5. Sisvel's Arguments Warrant Vacatur On All Grounds Of Invalidity Found By The Board

Honeywell curtly asserts that Sisvel's arguments do not warrant vacatur of the Board's decision on both grounds of invalidity because Sisvel affirmatively "waived" any argument that the Board erred in its second ground concerning the combination of Samsung and Nokia. *See, e.g.*, RB at 2, 4. As an initial matter, however, Honeywell's "waiver" argument was itself forfeited. *See* RB at 14-32 (not raising the "waiver" argument in the argument section of the response brief); *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (arguments raised only in the background of a brief and not in the actual argument section are forfeited); *Martinez-Serrano v. INS*, 94 F.3d 1256 (9th Cir. 1996) (issue raised in Statement of the Case but not actual argument section of appellate brief is deemed waived); *Simpson v. Union Oil Co.*, 411 F.2d 897, 900 n.2 (9th Cir. 1969) (same); RB at 2, 4, 5, 12 (presenting only skeletal waiver argument and citing just one inapposite case on the scope of the mandate rule—*Phil-Insul Corp.*); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-1321 (Fed. Cir. 2006) (argument not included in the argument section is forfeited, as are skeletal ones that are not fully developed).

In any event, Honeywell's (forfeited) waiver argument does not have merit. Honeywell complains that Sisvel expressly challenged the first ground of invalidity

(Samsung/Dahlman) but not the second (Samsung/Nokia). *See* RB at 2, 4, 5, 12 (citing to portions of Sisvel's brief prior to and after Sisvel's Argument Section II.A). But Sisvel did. The *first* substantive page of Sisvel's brief (BB at 2) expressly states that "Sisvel appeals the Board's rulings that invalided claims … as obvious based on the Samsung, *Nokia*, *and Dahlman* references" (i.e., both grounds), which was also made clear by Sisvel's discussion of the deficiencies of the Board's decision regarding Nokia too at length throughout Sisvel's principal brief, often alongside those regarding Samsung (*see* BB at 14-15, 21, 24, 28-29, 30-37).

But more importantly (as Honeywell tacitly admits), there is no dispute that Sisvel substantively challenged both invalidity grounds by dedicating over nine pages of its Argument Section II.A in its principal brief (BB at 21-30) to expressly and extensively challenging the Board's errors misconstruing the claims and Sisvel's argument and evidence below regarding Samsung's teaching of all 1s, which was the critical basis for the Board's findings regarding that respective limitation in *both* grounds of invalidity.[4] Sisvel also directly challenged the substantial evidence

[4] *See, e.g.*, Appx32-39 (Samsung's purported teaching on all 1s used in Samsung/Dahlman combination); Appx44 ("The Nokia and Samsung ground turns on whether Samsung teaches the second claims condition for SPS deactivation, i.e., 'the first field is entirely filled with '1'"; "For this limitation, Petitioner relies on Samsung in similar fashion as for the Dahlman and Samsung ground—i.e., Petitioner contends Samsung teaches 'the first field is entirely filled with '1'"; "Patent Owner presents the same arguments against Petitioner's reliance on Samsung in combination with Nokia as discussed above for the Dahlman and Samsung ground.").

(BB at Argument II.B) underlying the Board's analysis of the issue with regard to Samsung. And, indeed, Honeywell effectively concedes that at least Argument Section II.A of Sisvel's principal brief challenges the second ground of invalidity (Samsung and Nokia)—a section to which Honeywell fully responded with over a dozen pages on the all-1s issue. *See* RB at 5 (citing only II.*B* of Sisvel's argument section to claim waiver of any challenge to the second ground); *id.* at 14-27 (fully responding to Sisvel's arguments regarding all 1s). The all-1s issue for both grounds of invalidity is thus fully presented for appeal. *See, e.g.*, *United States v. Goforth*, 465 F.3d 730, 737 (6th Cir. 2006) (when argument advanced in an appellant's opening brief applies fully and equally to "an alternative basis for affirmance not separately argued therein" there is no waiver by the appellant to application of briefed argument to alternative basis for affirmance); *see also United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006) (appellate waiver doctrine designed only to prevent unfairness to appellee or minimize risk of opinion on unbriefed issue); *cf. Kao Corp. v. Unilever United States, Inc.* 441 F.3d 963, 973 at fn. 4 (Fed. Cir. 2006) (refusing to consider an argument not appearing before the argument section *or* in the argument section itself); *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012) (issue waived after a party mentioned the issue in a mere heading *and* failed to further develop the argument).

Whether the Board's decision on both grounds could be vacated in course of this appeal thus turns only (as it must) on whether the Board's errors misconstruing the claims and Sisvel's argument and evidence on the all-1s issue applies to *both* grounds of invalidity found by the Board. They clearly do, and Honeywell does not argue otherwise. *See* discussion *supra*; *see also* Appx44. Accordingly, if the Court agrees that the Board erred on this issue, the Board's decision on both grounds of invalidity should be vacated and remanded.

### B. The Board's Finding That the Use of All "1s" Would Have Been Obvious in View of Dahlman and Samsung is Not Supported by Substantial Evidence

As Sisvel showed, when properly considered, Dr. Smith's testimony established a lack of reasonable expectation of success here. *See, e.g.*, BB at 30-37. Honeywell's response is inapposite.

Honeywell raises four counterarguments: (1) the Board actually did consider Sisvel's arguments regarding reasonable expectation of success but rejected it after finding that the asserted prior art contained a "simple" solution and that there was no evidence such a solution would not work in the record (RB at 17-18); (2) the Board weighed Dr. Smith's testimony regarding expectation of success and found it wanting (RB at 28-30); (3) the Board simply believed Honeywell's expert over Dr. Smith (RB at 30-32); and (4) the Board was right because, under *Pfizer*, the standard

for a reasonable expectation of success is "reasonable," not "absolute" expectation of success (RB at 32).

Honeywell's first argument ignores the record below. The Board expressly said that it did not consider Sisvel's relevant argument—it declared that it "need not settle the parties' dispute" as to whether a POSITA would have had a reasonable expectation of success despite Samsung (or any other alleged prior art) not containing the calculations that all 1s would work. Appx35. And Honeywell's repeated assertion (at RB at 17, 24, 28) that the Board found "there is no evidence of record supporting the contention that Samsung's proposal would *not* work" (at Appx37) confirms it. Sisvel's point was not that there was proof Samsung's all 1s suggestion would *not* work, but that there was no proof that it *would* work for a POSITA to believe (as a factual matter in this specific field) that the proposal could be implemented with a reasonable expectation of success. The Board's associated curt dismissal of Dr. Smith's testimony in a single sentence as not being factually supported because he focused on that (effectively unrebutted) shortcoming of the prior art was error and unsupported by substantial evidence. Indeed, the Board's reasoning that Samsung provides a "simple" solution to a POSITA is directly undermined by the directly unrebutted testimony of Dr. Smith on point regarding expectation of success and the confirmation provided by Mr. Lanning that Samsung lacked the underlying assurances that would have provided a POSITA with a

reasonable expectation of success. *See, e.g.*, BB at 27-29, 31-32, 34; Appx2436-2442 at ¶¶ 63-82; Appx2261-2262 (69:12-70:17); Appx2277 (85:15-20); Appx2549 at 92:5-24.

Honeywell's second argument (that the Board properly dismissed Dr. Smith's testimony) fairs little better and is belied by the citations that it provides to the Board's decisions. For example, when discussing whether the Board fully and properly considered Dr. Smith's testimony about whether a code point is invalid can be analogized to a "chessboard's size," Honeywell cites a portion of the Board's decision where the Board misinterprets Sisvel's argument. *See* RB at 29 (citing Appx35) ("Claim 1 does not require performing any calculations . . . Nor does the claim specify any particular length of the field based on any calculations."). In this portion of its decision, the Board is considering Dr. Smith's testimony for an argument that Sisvel was not advancing—namely, that the claims somehow required calculations be performed to practice them and that the fields must be a certain length. *See* Appx35. As discussed above (*supra* at II.A), *that was not Sisvel's argument.* Rather, Dr. Smith's testimony illustrated the difficulties of knowing whether a RIV field value would always be invalid under all circumstances. *See* BB at 31-32 (describing that a coordinate which might be invalid on an 8-by-8 chessboard might be valid on a 10-by-10 board) (citing Appx2331-2332); *see also* Appx2255-2256 at 63:1–64:5. The Board did not discuss this aspect of Dr. Smith's

testimony as argued by Sisvel—and certainly not in the portion of the Board's opinion cited by Honeywell.

Further, Honeywell cites to portions of the Board's decision where the Board simply stated that "it is a matter of simple subtraction to figure out the invalid points." RB at 29 (citing Appx35). But this highlights the hindsight bias evident in the Board's decision. The Board failed to address in any meaningful way the unrebutted evidence of Dr. Smith that, in order to reach that conclusion, a POSITA would need such assurances because, *inter alia*, such calculations are not so simple in this field and such assurances were absent from the prior art, including Samsung and Nokia (which even Honeywell's own expert tacitly admitted). *See, e.g.*, Appx2261-2262 at 69:12-70:17; Appx2277 at 85:15-20; Appx2434-2439; Appx2440-2444; *see also* Appx2549 at 92:5-24.

Honeywell's third argument (that Mr. Lanning's testimony provided an alternative opinion that the Board could have reasonably relied upon to fully reject Sisvel's arguments regarding expectation of success) is also flawed. Honeywell relies on the same misinterpretations of Sisvel's arguments that are at the heart of this appeal. Honeywell cites to Mr. Lanning's testimony that the use of all 1s "would avoid any calculation and be a simple choice" and points to the Board's agreement

with that statement, noting that "any of the unused code point[s] could indicate the SPS resource release."[5] RB at 30-31 (citing Appx34; Appx37).

But once again, this misses the point. Sisvel provided unrebutted expert testimony that actually proceeding to use all 1s was not a "simple choice," and required the mathematical proofs, calculations, and/or charts found in the '279 patent for a POSITA *to have a reasonable expectation of success in doing so*. That was the critical point here. And nowhere in the citations provided by Honeywell does the Board ever refute the associated testimony that Dr. Smith provided, other than the conclusory (and incorrect for the reasons discussed above) statement that his underlying evidence was just "factually unsupported." *See, e.g.*, Appx2438-2439 at ¶ 66 (illustrating the calculations underlying the '279 patent's innovations that are absent from the prior art); Appx2440-2445 at ¶¶ 73-97 (relying on Honeywell's expert's testimony and the '279 patent's figures and specification to demonstrate the lack of viability of the prior art).

Nor is there legal or logical merit to the Board's "simple choice" conclusion that Honeywell relies on. A blacksmith, for instance, could make the "simple choice" of injecting oxygen into molten pig iron to enable the mass production of

[5] Notably, there also is no mention of any rationale in the record or the Final Written Decision as to *why* it would be a simple matter for a POSITA to arrive at the conclusion that the use of all 1s would always be an invalid value suitable for SPS deactivation, particularly in light of Dr. Smith's testimony.

steel (a common suggestion that, in theory, was simple to execute), but such simplicity of execution does not equate to *a reasonable expectation of success*, and certainly not because an inventor like Henry Bessemer (or William Kelly) later *proved* that it worked *and actually did it*. That is classic hindsight bias. And that is the same (improper) logic the Board relied on here. The Board assumed that implementing the choice of all 1s supposedly was not that hard because someone purportedly suggested it, and actually telling a system to consider that value as invalid was purportedly within the scope of a POSITA's skill. If that were enough, any suggestion within the skill of a POSITA to implement would be *automatically* rendered obvious. That would vitiate the entire basis for *also* requiring reasonable expectation of success as a critical factor in the theoretical obviousness inquiry under § 103. And it would reinject the very hindsight bias against which the reasonable-expectation-of-success requirement is designed to guard. Simply saying "do it" is not enough to prove obviousness even when "doing it" is within the skill of an ordinary artisan. A POSITA *also* needs reasonable assurance that "doing it" would work and not fail—that is, a reasonable expectation of success. That is what is missing here, as proven by Dr. Smith's unconsidered (and uncontested) testimony.

Honeywell also misses its mark in its fourth argument that the law only requires a reasonable, but not absolute, expectation of success. RB at 32 (citing *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1363 (Fed. Cir. 2007)). That *legal*

standard has never been in dispute. The point that Sisvel raised was what a POSITA would, *as a factual matter*, require to have a reasonable expectation of success. And Dr. Smith testified that because the field of endeavor was that of cellular communications (and especially cellular systems and standards that needed to work worldwide), factual precision and certainty through mathematical (or similar) assurance was required for a POSITA to reasonably expect success in implementing a system using a proposed value for SPS deactivation (like all 1s) and would never do so absent such proof that established the proposed value would actually work every time. *See, e.g.*, Appx2261-2262 (69:12-70:17); Appx2277 (85:15-20); Appx2434-2439; Appx2440-2444; *see also* BB at 14-16, 21-37. That factual testimony about reasonable expectation of success does not apply an incorrect legal standard demanding absolute expectation of success—it addresses the quintessential factual question of what a POSITA would demand *in this particular field and with this particular proposed prior art* to reasonably expect success, which is, in this particular case, field, and combination, mathematical (or similar) proof that the proposed SPS deactivation value (all 1s) would actually work in all circumstances (proof that the patentees here first provided, not the prior art). *See In re Antor Media Corp.*, 689 F.3d at 1289-90 (finding that the analysis of whether a POSITA would have an expectation of success must be viewed within the context of the state of the art and the nature of the invention).

## III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For foregoing reasons and those in Sisvel's principal brief, Sisvel respectfully requests that the Board's Final Written Decision be vacated and remanded.

May 31, 2023

Respectfully submitted,

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin
tdevlin@devlinlawfirm.com
Andrew DeMarco
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010

*Attorneys for Appellant*
*Sisvel S.p.A.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared in a proportionally spaced typeface in 14-point font and includes 6,616 words, excluding the parts exempted under those Rules.

*/s/ Timothy Devlin*
Timothy Devlin

*Attorney for Appellant*
*Sisvel S.p.A.*